```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ILLINOIS
                    EASTERN DIVISION
```

| | |
|---|---|
| **BUMP HEALTH, INC.**, an Illinois Corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>**MISS TO MRS WEDDING GIFTS, INC.**, d/b/a **BUMP TO MOM**, a Canadian Corporation,<br><br>    Defendant. | Case No. 23 C 4101<br><br>Judge Harry D. Leinenweber |

### MEMORANDUM OPINION AND ORDER

This case arises from allegations of trademark infringement concerning the trademarks of two prenatal subscription box companies. For the reasons stated herein, Plaintiff's Motion for a Preliminary Injunction is denied.

### I. BACKGROUND

Plaintiff Bump Health, Inc. ("Bump") moves for a preliminary injunction, barring Defendant Miss to Mrs Wedding Gifts ("Miss to Mrs") from allegedly infringing Bump's federally registered trademarks.

Plaintiff Bump holds three trademark registrations for BUMP BOXES, BUMP BOX, and covering subscription services that offer various retail products to expecting

families such as clothing items and health products. The United States Patent and Trademark Office (the "USPTO") registered these trademarks in March 2015. (Dkt. No. 9-3, Bump Boxes Registered Trademark.) Bump sells its subscription boxes online through its website and offers monthly gift boxes, curated to the appropriate time of pregnancy. Consumers are also able to purchase goods on their own, without purchasing them through a box. The products and services are promoted via social media sites such as Instagram.

Defendant Miss to Mrs, a Canadian entity, entered the subscription box service market in 2018 by selling bridal subscription boxes under the Miss to Mrs brand. These bridal subscription boxes are shipped monthly to subscribers – mostly brides preparing for weddings – and the products offered include wedding day essentials, calendars, and other wedding preparation products. The boxes are branded "Miss to Mrs" because the phase describes the movement of a bride-to-be from single to married. In November 2022, Miss to Mrs expanded its subscription box service to offer boxes tailored to pregnant women and expecting families in order to continue the relationship with their customers and to reach new customers. Miss to Mrs chose the name "Bump to Mom" for their new subscription box product. In selecting this name, Miss to Mrs notes it sought to maintain the

structure of the Miss to Mrs brand to create the association between the two brands and assist customers in identifying the new brand. Like "Miss to Mrs," "Bump to Mom" denotes the movement from one phase of life into the next, from pregnancy to motherhood. According to Defendant, "Bump" is used as a verb in its Bump to Mom brand to denote movement to a new state (*i.e.,* motherhood), though the Court views its use as a noun, referring to the condition of being pregnant. Like Bump Boxes, Bump to Mom sells its boxes through its website, and advertises through social media and Google search terms as well.

Miss to Mrs filed a U.S. Trademark Application for its "Bump to Mom" products on December 23, 2022, and began advertising and selling Bump to Mom subscription boxes in May 2023. On June 26, 2023, Plaintiff filed its lawsuit against Defendant for trademark infringement, unfair competition, common law trademark infringement and unfair competition, and violation of the Illinois Uniform Deceptive Trade Practices Act ("UDTPA") in relation to Defendant's Bump to Mom brand. (Dkt. No. 1.) On August 4, 2023, Plaintiff filed this Motion for Preliminary Injunction (Dkt. No. 9).

## II. LEGAL STANDARD

"An equitable, interlocutory form of relief, a preliminary injunction is an exercise of a very far-reaching power, never to

- 3 -

be indulged in except in a case clearly demanding it." *Valencia v. City of Springfield,* 883 F.3d 959, 965 (7th Cir. 2018) (internal quotation marks omitted). The party seeking the preliminary injunction must make three showings: likelihood of success on the merits; no adequate remedy at law; and irreparable harm prior to resolution of its claims. *Id.* If all three requirements are met, the Court then moves to the balancing phase, in which it "weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." *Id.* at 966 (quotation marks omitted). Finally, the Court considers the public interest in denying or granting the injunction. *Ty, Inc. v. Jones Grp., Inc.,* 237 F.3d 891, 895 (7th Cir. 2001).

### III. DISCUSSION

#### A. Likelihood of Success on the Merits

The Court considers first Plaintiff's likelihood of success on the merits. To succeed on its federal trademark infringement claim, Plaintiff must establish that (1) its "Bump Box" trademark is protectable; and (2) there is a likelihood of confusion as to the origin of Defendant's product. *Ty,* 237 F.3d at 897. Because the parties do not dispute that Plaintiff's "Bump Box" trademarks

- 4 -

are protectable, the Court's analysis focuses on the likelihood of confusion. Plaintiff must establish the same elements for its Lanham Act and UDTPA claims. *Entertainment One UK Ltd. v. 2012Shiliang,* 384 F.Supp.3d 941, 948-49 (N.D. Ill. 2019).

"Seven factors comprise the likelihood of confusion analysis: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of the plaintiff's mark; (6) actual confusion; and (7) intent of the defendant to 'palm off' his product as that of another." *Packman v. Chicago Tribune Co.,* 267 F.3d 628, 643 (7th Cir. 2001). No factor is dispositive, but three factors are considered particularly important: the similarity of the marks, the defendant's intent, and actual confusion. *Barbecue Marx, Inc. v. 551 Ogden, Inc.,* 235 F.3d 1041, 1044 (7th Cir. 2000).

### 1. *Similarity Between the Marks*

Both Plaintiff's and Defendant's mark starts with the word "Bump." As to be expected, Defendant emphasizes the differences in what comes after – "to Mom" versus "Box" – while Plaintiff finds the first word to be the most salient. Here, "Bump" appears as the salient portion of both marks. The Seventh Circuit adheres to the rule that salient portions of the

trademark be given greater weight than surrounding elements. *Henri's Food Products Co., Inc. v. Kraft Inc.,* 717 F.2d 352, 356 (7th Cir. 1983); *see SFG, Inc. v. Musk,* 2019 WL 5085716, at *3 (N.D. Ill. Oct. 10, 2019) ("Next Door Bistro" obviously similar to "Next Door American Eatery").

The imagery included on the boxes in addition to the actual text of the marks is similar too. On Plaintiff's subscription box, the words "Bump" and "Boxes" are separated by a white circle containing an image of a woman's silhouette in pink and with the capital letter "B" outlining the shape of her chest and abdomen area to portray her with a baby bump. The mark that appears on the Bump Boxes website is similar but appears with a black background and a white silhouette. The Instagram and Facebook account photos for Bump Boxes is this same black circle with the white silhouette, with the shape of a "B" outlining the chest and stomach. (Dkt. No. 9-7, 9-8.)

  

In a somewhat similar fashion, Defendant's mark "Bump to Mom" appears on its subscription box below the shape of a "B" in

white ink. This "B" seems intended to portray the shape of a chest and pregnant belly, as well, in a subtler, more abstract way, though it also resembles a tilted heart. It is this "B," appearing in dark grey over a white background, that makes up the account photo for Bump to Mom's Instagram and Facebook account. While not identical, as a gestalt, the images of both parties' "B"s resemble each other.




But there are relevant differences as well that make consumer confusion less likely. When attempting to determine if two marks are similar, comparison should be made "in light of what happens in the marketplace and not merely by looking at the two marks side by side." *Ty.*, 237 F.3d at 898 (internal quotations omitted). This inquiry extends both to the context of the physical subscription boxes themselves, as well as to the broader context of the online platforms in which consumers encounter these brands. Here, the subscription boxes themselves are visually distinct. Bump Boxes are a solid bright pink, and the words "Bump" and "Boxes" are separated by the imagery of the woman in a dress. Bump to Mom boxes are tan and brown in color

and patterned with neutral-toned silhouettes of pregnant women. The "Bump to Mom" text appears in capital letters and is not broken up with any imagery. Further, the parties use "Bump" differently; Plaintiff uses it as an adjective to describe the nature of the subscription box. Defendant argues it uses "Bump" as a verb to denote movement to motherhood, but the Court sees it as referring to the condition of pregnancy – a noun.

While similar use of the capital "B" for each party's Instagram and Facebook account photo weighs in favor of Plaintiff, the broader context of the websites with imagery of the visually distinct boxes, and the differences in how each uses "Bump", tips this factor slightly in favor of Defendant.

### 2. *Similarity of Goods or Services*

The key issue as to product similarity is whether the products are related enough that the public might attribute them (in source or affiliation) to a single producer. *Ty,* 237 F.3d at 899. Here, both parties' market and sell prenatal subscription boxes to pregnant women and new mothers. The pricing is similar: Bump Boxes offers a box starting at a price under $30, with a six-month subscription priced around $240, while Bump to Mom services start at $35, and the typical subscription is six months or $210. (Dkt. No. 20-1, Berestyuk Declaration, ¶ 10.) Both parties offer different options for length of subscriptions,

including month-to-month, six months, and nine months. There is no denying that the parties "directly compete for clients," a fact that weighs in favor of Plaintiff. *See Brithric Enterprises, LLC,* 2021 WL 1208957, at *6 (N.D. Ill. Mar. 31, 2021). Both parties primarily if not solely advertise online, offer the same specialized service, and serve the same audience. *See Life After Hate, Inc. v. Free Radicals Proj., Inc.,* 410 F.Supp.3d 891, 908 (N.D. Ill. 2019).

Contrary to Defendant's argument otherwise, the Court does not find the fact that Bump to Mom boxes are "themed" to the stage of pregnancy to undercut product similarity, particularly when Plaintiff argues its products correspond to stage of pregnancy as well. Nor does the Court find it sufficiently distinguishing that Bump to Mom boxes sell "Bump to Mom"-branded products only, while Bump Boxes sell third-party products. Given the direct competition for products designed to serve the same niche audience, the Court finds this factor weighs in favor of Plaintiff.

### 3. *Area and Manner of Concurrent Use*

Several factors are relevant to whether products are related in terms of use, promotion, sales, or distribution such that their area and manner of concurrent use supports a finding of confusion, including: their geographical distribution areas,

- 9 -

any competition between them, whether they are sold in the same section and type of store, and whether they are sold through the same marketing channels. *Ty,* 237 F.3d at 900.

Neither party submitted evidence relating to their customer demographics, though each party markets and sells online to customers in the U.S. And while the fact that both parties rely primarily or solely on online sales is not enough on its own to be determinative, *Games Workshop Ltd. v. Chapterhouse Studios, LLC,* 2012 WL 5949105, at *17 (N.D. Ill. Nov. 27, 2012), the fact that the parties compete with one another – as noted above – also weighs in favor of the Plaintiff here. Finally, though not discussed in detail by either party, the Court notes that online platforms and search engines operate through keyword searches. Because the parties share "Bump" as a key word and offer a very similar product, the chances of customers encountering both products when searching for the other is higher, possibly creating confusion. *See Wm. Wrigley Jr. Co. v. Swerve IP, LLC,* 900 F.Supp.2d 794, 801 (N.D. Ill. 2012) (Leinenweber, J.).

### *4. Degree of Care Likely to be Exercised by Consumers*

"Where consumers are sophisticated, deliberate buyers, confusion is less likely than where the consumers are prone to make uninformed, impulse purchases." *Planet Hollywood (Region IV), Inc. v. Hollywood Casino Corp.,* 80 F.Supp.2d 815,

- 10 -

882 (N.D. Ill. 1999). By contrast, "[t]he more widely accessible and inexpensive the products and services," the less care consumers will likely take. *CAE Inc. v. Clean Air Eng'g., Inc.,* 267 F.3d 660, 683 (7th Cir. 2001).

Here, while the products are widely accessible for anyone to purchase online, they are priced as such that customers are not likely to purchase them impulsively. Though neither of the boxes on its own is very expensive – both under $40 – a six-month subscription for either is over $200. Plaintiff notes that the subscription boxes are likely purchased as gifts for other people, but the Court does not see how the act of gift-giving to a pregnant friend or family equates to a lower care exercised by consumers. Pregnancy and early parenthood are intimate, important stages of someone's life, making it more likely consumers give thought and scrutiny to the products they purchase for themselves or others experiencing the transition. With a higher degree of care comes a lower likelihood of confusion. This factor weighs in favor of Defendants.

### 5. *Strength of Plaintiff's Mark*

"The stronger the mark, the more likely it is that encroachment on it will produce confusion." *AutoZone, Inc. v. Strick,* 543 F.3d 923, 933 (7th Cir. 2008) (internal quotation marks omitted). Courts analyze the strength of a party's mark by

evaluating either its commercial strength, its conceptual strength, or both.

For commercial strength, courts evaluate its overall "economic and marketing strength." *Id.* The only ways to directly prove the public's evaluation of a mark are through customer testimony and consumer surveys. *Gimix Inc. v. JS & A Grp., Inc.,* 699 F.2d 901, 907 (7th Cir. 1983). The Court may also consider evidence of the frequency of the mark's display and the quantity of advertising dollars used to promote the mark as relevant factors to the mark's strength. *See AutoZone,* 543 F.3d at 933. In addition, a party may show the strength of its mark through long-term, continuous use and good reputation. *See Barbecue Marx,* 235 F.3d at 1045.

Plaintiff offers no customer testimony or consumer surveys, but argues its marks are strong because they have nearly a decade of use, bolstered by tens of millions of dollars in advertising and marketing, as well as tens of millions in revenue and thorough enforcement and policing efforts. The Court agrees regarding long-term use. *See Brithric,* 2021 WL 1208957, at *8 (six years of trademark use establishing "long-term use"). Without more information, though, the Court is not able to assess Bump's expenditure on advertising as a percentage of its total revenue nor the efficacy of its promotional efforts in creating

marketplace recognition. *Florida Int'l Univ. Bd. Of Trustees v. Florida Nat'l Univ., Inc.,* 830 F.3d 1242, 1259 (11th Cir. 2016) (evidence of promotional efforts insufficient on their own); *LHO Chicago River, LLC v. Rosemoor Suites, LLC,* 2017 WL 467687, at *10 (N.D. Ill. Feb. 3, 2017) (spending less than 1% of revenue on marketing did not constitute significant amount); *Brithric*, 2021 WL 1208957, at *8 (plaintiff's failure to provide evidence to assess marketing expenditure as percentage of revenue weighs in favor of defendant).

As for conceptual strength, courts classify marks into five categories of increasing distinctiveness: (i) generic; (ii) descriptive; (iii) suggestive; (iv) arbitrary; and (v) fanciful. *Platinum Home Mortg. Corp. v. Platinum Fin. Grp.*, Inc.*,* 149 F.3d 722, 727 (7th Cir. 1998) (citing *Two Pesos, Inc. v. Taco Cabana Inc.,* 505 U.S. 763, 767–68 (1992)). The level of protection to which a mark is entitled depends on where it falls on the spectrum of distinctiveness, the least distinctive being the "generic" mark to the most distinctive being the "fanciful" mark. *Two Pesos, Inc.,* 505 U.S. at 768. At best, Plaintiff's marks are suggestive, since they require some imagination to connect "bump" to the belly of a woman in the early stages of pregnancy. *Platinum Home Mortg.,* 149 F.3d at 727. Defendant argues Plaintiff's marks are merely descriptive, pointing to third

parties in the market that use the same word, Bump. (Dkt. No. 19-2, Exhibit A). But without evidence that these third-party marks have been "promoted or become recognized by consumers in the marketplace," this evidence falls flat. *Autozone,* 543 F. 3d at 933. The Court will note, though, that on its website, Plaintiff touts its recognition by a number of presumably widely circulated platforms, including one called "The Bump," a platform unrelated to Plaintiff offering guidance and community for families navigating pregnancy and early parenthood. (*https://bumpboxes.com/,* last visited October 30, 2023). As "bump" becomes more frequently used in the pregnancy and parenthood markets, the less "suggestive" the word becomes, and the less protection it will receive from trademark law. This factor weighs slightly in favor of Plaintiff, though without more information about efficacy of marketing spending or consumer surveys, it is difficult to assess truly the strength of Plaintiff's marks.

### 6. *Evidence of Actual Confusion*

Evidence of actual confusion is not required to prove that a likelihood of confusion exists. *CAE*, 267 F.3d at 685. But evidence of actual confusion is considered particularly important to the Court's analysis. *Barbecue Marx,* 235 F.3d at 1044. Here, Plaintiff all but concedes there is no evidence of

actual confusion, pointing to the fact that Bump to Mom remains a new product on the market. The Court does not expect such evidence to exist so soon after the allegedly offending product is marketed. *Eli Lilly & Co. v. Natural Answers,* 233 F.3d 456, 464 (7th Cir. 2000). However, without any evidence of actual confusion, this factor weighs in favor of Defendants.

### 7. *Intent (or lack thereof) to Copy*

The Seventh Circuit has explained that palming or passing off is a type of fraud in which the defendant "tr[ies] to get sales from a competitor by making consumers think that they are dealing with that competitor, when actually they are buying from the passer off." *Liquid Controls Corp. v. Liquid Control Corp.,* 802 F.2d 934, 940 (7th Cir. 1986). Generally, to establish this factor, the plaintiff must present some evidence that the defendant acted in bad faith. *Packman v. Chi. Trib. Co.,* 267 F.3d 628, 644–45 (7th Cir. 2001). Plaintiff has put forward no real evidence of bad faith. Here, the visual distinctions between the parties' products, discussed above, as well as the relatively ubiquitous use of the word "bump" in the pregnancy market, weighs against a finding of Defendant's intent to copy Plaintiff's marks.

The Court concludes that Plaintiff has not demonstrated a strong showing of likelihood of success on the merits. In

addition to the consumers likely exercising a high degree of care with respect to product selection, the three most important factors – similarity of the marks, evidence of actual confusion, and intent to copy – all weigh in favor of Defendants.

### B. No Adequate Remedy at Law/Irreparable Harm

Even though the Court does not find that Plaintiff successfully demonstrated a likelihood of success on the merits, the Court considers the remaining requirements for a preliminary injunction: namely, a showing that Plaintiff has "no adequate remedy at law and as a result, will suffer irreparable harm if the injunction is not issued." *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002). The Court applies the presumption the Seventh Circuit suggests exists in trademark cases of irreparable harm, due to the difficulty of quantifying the impact of consumer confusion on a brand's value. *Kraft Foods Grp. Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 741 (7th Cir. 2013). The presumption is rebuttable by show of delay in seeking the preliminary injunction. *Ty*, 237 F.3d at 903. Defendant correctly notes that courts have reversed or denied preliminary injunctions when the plaintiff delays in filing a preliminary injunction, as this tends to undermine any argument that she will face irreparable harm. However, Plaintiff filed its lawsuit in June 2023, the month after Defendant put

its allegedly offending product on the market and moved for a preliminary injunction about one month after that. Defendant cites no cases where one- or two-months delay sufficed to rebut the presumption of irreparable harm. To start the clock, as Defendant argues, at the filing of an 'intent to use trademark application' would incentivize unnecessary and costly infringement filings when less-costly alternatives may be more suitable. (USPTO Application filing basis, *https://www.uspto.gov/trademarks/basics/application-filing basis#:~:text=Intent%20to%20use%20means%20that,making%20or%20selling%20jewelry%20yet*, last visited October 31, 2023) (noting that intent to use trademark applications suggest only an intent to start using the trademark in commerce in the next three to four years); *Kohler Co. v. Whistling Oak Apts.,* 2021 WL 2434203, at *9 (E.D. Wis. June 14, 2021) (starting clock when product circulated in market to avoid inefficient incentives).

## C. Balance of Harms

The Seventh Circuit applies a sliding scale approach when balancing harms. "The more likely it is the plaintiff will succeed on the merits, the less the balance of irreparable harms need weigh towards its side; the less likely it is the plaintiff will succeed, the more the balance need weigh towards its side." *Kraft Foods,* 735 F.3d at 740 (quotation marks omitted). Plaintiff

does not have as strong a chance of success on the merits, meaning a stronger showing is needed that the balancing of harms weighs in its favor. Plaintiff asserts its "inability to control goodwill shows irreparable harm." (Dkt. No. 9, Motion for Preliminary Injunction, at 12.) Without more concrete evidence, this falls flat in the face of Defendant's evidence of harm were the Court to grant the preliminary injunction, which includes a complete shut-down for eight to ten months; orchestrating new branded products and preparing new social media channels; and disposing of thousands of units ready for shipping, for example.

Finally, the Court must consider the public interest in denying or granting the injunction. *Ty,* 237 F.3d at 895. Enforcement of trademark law serves the public interest by reducing consumer confusion. *See Eli Lilly & Co.,* 233 F.3d at 469. On the other hand, "trademark protection should not interfere with traditional policies of a competitive market." *Platinum Home Mortg.,* 149 F.3d at 726. The Court has already determined that there is not a high likelihood of confusion here. Defendant uses "Bump" as a noun to convey a condition, while Plaintiff uses it as an adjective. It is not difficult to imagine the various other meanings such a word could take on, and the Court does not find it suitable to award Bump Health a monopoly

over the word at this time. Thus, the public interest is best served by allowing Defendant to continue its respective use.

## IV. CONCLUSION

For the reasons stated herein, the Court denies Plaintiff's Motion for a Preliminary Injunction.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: 11/2/2023

over the word at this time. Thus, the public interest is best served by allowing Defendant to continue its respective use.

## IV. CONCLUSION

For the reasons stated herein, the Court denies Plaintiff's Motion for a Preliminary Injunction.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: 11/2/2023